**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**2145 AVOCADO LAND TRUST**
**and HOME WRECKERS, INC.,**

   **Plaintiffs,**

v.         **Case No: 6:24-cv-1691-PGB-RMN**

**FLORIDA EAST COAST**
**RAILWAY, LLC,**

   **Defendant.**
_____/

## ORDER

   This cause comes before the Court upon Defendant Florida East Coast Railway, LLC's Motion to Dismiss Complaint. (Doc. 13 (the "**Motion**")). Plaintiffs 2145 Avocado Land Trust and Home Wreckers, Inc., filed a response in opposition (Doc. 19 (the "**Response**")), and the matter is now ripe for review. Upon consideration, the Motion is due to be denied.

## I.  BACKGROUND[1]

   Plaintiff 2145 Avocado Land Trust is the owner of a property located in Brevard County, Florida (the "**Property**") that is leased by Plaintiff Home Wreckers, Inc. (collectively, the "**Plaintiffs**"). (Doc. 1, ¶ 7). Defendant Florida East

---

[1] This account of the facts comes from Plaintiffs' Complaint. (Doc. 1 (the "**Complaint**")). The Court accepts well-pled factual allegations therein as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

Coast Railway, LLC (the "**Defendant**") owns and operates a railway directly adjacent to the property. (*Id.* ¶ 9).

In preparation for Brightline trains to begin service from Orlando to Miami on the railway, Defendant renovated the railway tracks and surrounding area. (*Id.* ¶¶ 10–12). As part of this renovation, the drainage pattern and right-of-way of the railway tracks was changed. (*Id.* ¶ 12). Due to this change, the drainage pattern now directs water away from the railway and right-of-way and onto the Property. (*Id.* ¶ 13).

Accordingly, Plaintiffs initiated this action on September 17, 2024, against Defendant. (Doc. 1). In the Complaint, Plaintiffs allege a takings claim, and in the alternative, a trespass claim. (*Id.*). Defendant moved to dismiss the Complaint, Plaintiffs responded in opposition, and the matter is thus ripe for review. (Docs. 13, 19).

## II.    STANDARD OF REVIEW

### A.    Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a party may challenge subject matter jurisdiction on facial or factual grounds. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). For facial challenges, as here, courts look to the face of the complaint and determine whether the plaintiff sufficiently alleges standing. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys. Inc.*, 524 F.3d 1229, 1232–33 (11th Cir. 2008). In doing so, the court is limited to the complaint's allegations and exhibits, which the court must

accept as true. *Id.* at 1232. Factual challenges, in contrast, allow courts "to consider extrinsic evidence such as deposition testimony and affidavits." *Carmichael*, 572 F.3d at 1279.

### B.    Failure to State a Claim

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Thus, to survive a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam). However, though a complaint need not contain detailed factual allegations, pleading mere legal conclusions, or "a formulaic recitation of the elements of a cause of action," is not enough to satisfy the plausibility standard. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," and the court is "not bound to accept as true a legal conclusion

couched as a factual allegation." *Iqbal*, 556 U.S. at 679; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In sum, the court must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678–79.

## III.  DISCUSSION

In the Motion, Defendant seeks dismissal of Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 13). Defendant's Motion largely hinges on the Interstate Commerce Commission Termination Act of 1995 ("**ICCTA**"). (*See id.*); 49 U.S.C. § 10101–11908. Accordingly, the Court briefly summarizes the ICCTA, in relevant part, below.

Congress enacted the ICCTA to provide "federal uniformity in the regulation of rail transport." *See Fla. E. Coast Ry. Co. v. City of West Palm Beach*, 266 F.3d 1324, 1337 (11th Cir. 2001). To ensure this uniformity, Congress established the Surface Transportation Board to regulate railroad operations. *See id.* The Surface Transportation Board's exclusive jurisdiction is as follows:

> (b)    The jurisdiction of the [Surface Transportation] Board over—
>
> (1)    transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State, is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b). Section 10501(b) thus sets forth the exclusivity of jurisdiction and remedies designated to the Surface Transportation Board. *See Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 805 (5th Cir. 2011) (interpreting § 10501(b) to include an "exclusive-jurisdiction provision" and an "exclusive-remedies provision," respectively (citing *Franks Inv. Co. LLC v. Union Pac. R. Co.*, 593 F.3d 404, 409–10 (5th Cir. 2010))). Accordingly, courts have referred to § 10501(b) as the ICCTA's preemption provision, which seeks "to displace only 'regulation,' i.e., those state laws that may reasonably be said to have the effect of 'manag[ing]' or 'govern[ing]' rail transportation . . . while permitting the continued application of laws having a more remote or incidental effect on rail transportation." *See Fla. E. Coast*, 266 F.3d at 1331 (citations omitted).

### A.    Count I: Takings Claim

Plaintiffs allege Defendant's redirection of water onto the Property amounts to a taking under the Fifth Amendment, pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983. (Doc. 1, ¶¶ 19–21). Defendant argues that Plaintiffs' takings claim should be dismissed on two grounds: (1) Defendant is not a state actor subject to suit under § 1983; and (2) Plaintiffs must bring their takings claim to the

Surface Transportation Board. (Doc. 13, pp. 3–6). The Court discusses these issues in turn.

### 1.    *Whether Florida East Coast Railway, LLC, Is a State Actor*

Defendant first argues that its mere possession of eminent domain powers does not make it a state actor subject to suit under § 1983. (*Id.* at pp. 3–5). In response, Plaintiffs posit they have sufficiently alleged Defendant is a state actor under the "public function" test. (Doc. 19, pp. 4–9).

The Eleventh Circuit has clarified three instances in which private entities, like Defendant, may be considered state actors:

> (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("**State compulsion test**"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("**public function test**"); or (3) the State had so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise ("**nexus/joint action test**").

*Charles v. Johnson*, 18 F.4th 686, 694 (11th Cir. 2021) (emphasis added) (citations omitted).

Here, Plaintiffs allege that, because Defendant has been granted the power of eminent domain under Florida law, it performs "a public function that [is] traditionally the exclusive prerogative of the state." (Doc. 1, ¶ 18 (citing *Charles*, 18 F.4th at 694)). At this stage in the proceedings, Plaintiffs' allegations—accepted as true—are sufficient to allege Defendant is a state actor under the public function

test.[2] *See id.*; *see also Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) (defining the "public function" test to apply to functions like "exercising eminent domain" (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352–53 (1978))).

2.    *Whether Plaintiffs Must Bring Their Takings Claim to the Surface Transportation Board*

Next, Defendant argues that, under § 10501(b), Plaintiffs must "exhaust their administrative remedies before the Surface Transportation Board prior to bringing a claim under § 1983 or seeking other remedies in federal courts." (Doc. 13, pp. 5–7). In response, Plaintiffs assert that Defendant's argument is unsupported because the ICCTA does not address constitutional claims or the exhaustion of remedies. (Doc. 19, pp. 9–13).

In *Florida East Coast,* the Eleventh Circuit explained that the Surface Transportation Board's exclusive jurisdiction is "with respect to *regulation* of rail transportation." 266 F.3d at 1337 (emphasis in original) (citing 49 U.S.C. § 10501(b)). As such, the Surface Transportation Board's jurisdiction regarding remedies is exclusively "*limited to remedies with respect to rail regulation—not State and Federal law generally.*" *Id.* (emphasis in original) (citing H.R. Conf.

---

[2]    Much of Defendant's argument depends on *Jones Creek Investors, LLC v. Columbia County*, 98 F. Supp. 3d 1279 (S.D. Ga. 2015), where the court found that the railroad at issue was not a state actor under § 1983. However, *Jones Creek* is both procedurally and factually distinguishable from the case at hand. Procedurally, the court in *Jones Creek* reached its finding at the summary judgment posture, and thus, it had the benefit of a more complete record to analyze whether the railroad was a state actor. *See* 98 F. Supp. 3d at 1294–97. Factually, the court in *Jones Creek* applied the "nexus" test, not the "public function" test. *See id.* Moreover, the eminent domain power at issue in *Jones Creek* was restricted as it was subject to the state of Georgia's administrative hurdles. *See id.*; (*see also* Doc. 19, p. 8). Ultimately, Defendant's reliance on *Jones Creek* is unavailing.

Rep. 104–422 (1995)); *see also Franks*, 593 F.3d at 410 ("To the extent remedies are provided under laws *that have the effect of regulating rail transportation*, they are preempted." (emphasis in original)).

Simply put, a plain reading of § 10501(b) does not support Defendant's argument that § 10501(b) "*mandate*[s] that Plaintiffs exhaust their administrative remedies before the [Surface Transportation Board] prior to bringing a claim under § 1983." (Doc. 13, p. 7 (emphasis added)). Further, Defendant fails to cite any legal authority to support its position in the context of the ICCTA. (*Id.* at pp. 5–7). Instead, Defendant cites to *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1018 (1984), where the Supreme Court found an exhaustion requirement within the Federal Insecticide, Fungicide, and Rodenticide Act ("**FIFRA**"). (*Id.* at pp. 6–7). Defendant, however, conveniently ignores that the Supreme Court reached such a finding based on explicit language in the FIFRA that indicates a forfeiture of right. *See Ruckelshaus*, 467 U.S. at 1018. Yet, Defendant fails to point to language in the ICCTA indicating the same. (*See* Doc. 13). Defendant's reliance on *Ruckelshaus* is thus unavailing, and consequently, Defendant's argument fails.

## B. Count II: Trespass Claim

In the alternative to Count I, Plaintiffs allege that Defendant's redirection of water onto the Property amounts to trespass under Florida common law. (Doc. 1, ¶¶ 22–25). Defendant maintains that Plaintiffs' trespass claim is preempted by § 10501(b) because it "impermissibly seeks to regulate [Defendant's] railroad operations." (Doc. 13, pp. 7–10). Plaintiffs, in response, assert that their trespass

claim is not preempted because it does not "have the effect of managing or governing rail transportation." (Doc. 19, pp. 13–15).

> 1. *Preemption Under the ICCTA*

"Federal preemption of state laws is a creature of the Supremacy Clause." *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1224 (11th Cir. 2014) (citing U.S. CONST. art. VI, cl. 2). Under the Supremacy Clause, the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land." U.S. CONST. art. VI, cl. 2. Federal preemption manifests either expressly or impliedly. *See Daniels v. Exec. Dir. of Fla. Fish & Wildlife Conservation Comm'n*, 127 F.4th 1294, 1305 (11th Cir. 2025). Express preemption occurs where "Congress expressly displaces state law using the text of a federal statute." *Id.* (citations omitted). Implied preemption occurs "where there is a conflict with a congressional enactment or where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress left no room for supplementary state regulation in a particular area of law." *Lawson-ross v. Great Lakes Higher Educ. Corp.*, 955 F.3d 908, 916 (11th Cir. 2020) (internal quotation marks and citations omitted).

In *Florida East Coast*, the Eleventh Circuit found the ICCTA to expressly preempt state laws "'with respect to *regulation* of rail transportation.'" *See Fla. E. Coast*, 266 F.3d at 1331 (emphasis in original) (citing 49 U.S.C. § 10501(b)). Thus, the displacement of regulation is "narrowly tailored" to "those state laws that may reasonably be said to have the effect of 'manag[ing]' or 'govern[ing]' rail

transportation . . . while permitting the continued application of laws having a more remote or incidental effect on rail transportation." *Id.* (citations omitted). Although *Florida East Coast* did not directly address implied preemption, other circuits have found the ICCTA to impliedly preempt state laws that "have the effect of unreasonably burdening or interfering with rail transportation." *See* 1226 F.3d at 1329 n. 3; *Franks*, 593 F.3d at 413–415; *see Edwards v. CSX Transp. Inc.*, 983 F.3d 112, 121–24 (4th Cir. 2020); *see N.Y. Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 252–55 (3d Cir. 2007).

a.    *Express Preemption*

Here, the Court does not find that the ICCTA expressly preempts the trespass law at issue. The trespass law is not a regulation of rail transportation, nor does it seek to manage or govern rail transportation. *Contrast Franks*, 593 F.3d at 411 (finding no express preemption of the state property laws because they are "not meant to regulate railroad transportation, though at times they may have an incidental effect on railroad transportation"), *with Elam*, 635 F.3d at 807 (finding express preemption of a negligence *per se* claim because the underlying anti-blocking statute targeted railroad companies and rail crossings).

Moreover, the two cases Defendant relies upon to assert that the ICCTA's preemption language is "broad" and "unambiguous" both addressed state laws *targeted* towards rail transportation. *See Friberg v. Kan. City S. Ry. Co.*, 267 F.3d 439, 442–44 (5th Cir. 2001) (analyzing, primarily, whether the ICCTA preempted an anti-blocking statute that regulated the time a train could occupy a rail

crossing); *see also CSX Transp., Inc. v. Ga. Pub. Serv. Comm'n*, 944 F. Supp. 1573, 1581–86 (N.D. Ga. 1996) (deciding whether the ICCTA preempted the defendant's authority to regulate railroad agency closings). Such is not the case here, where Plaintiffs' trespass claim arises under generally applicable common law.

### b.    *Implied Preemption*

As to implied preemption, determining whether the ICCTA impliedly preempts Plaintiffs' trespass claim is a fact-based assessment that is inappropriate at this stage of the case. *See Franks*, 593 F.3d at 413–415 (highlighting the Surface Transportation Board's amicus brief which provided that the implied preemption analysis is "a fact-bound case-specific determination"). Specifically, the Court requires the facts and circumstances leading to Plaintiffs' trespass claim and requested remedy to determine whether and to what extent the claim burdens or interferes with rail transportation.

Notably, the cases that Defendant relies upon entail fact-based assessments. In *Funderburk v. South Carolina Electric & Gas Co.*, 406 F. Supp. 3d 527, 536–41 (D.S.C. 2019), the court found that the ICCTA preempted plaintiffs' state law claims at the summary judgment stage, where the court was aided by a more complete record. Indeed, the court in *Funderburk* highlighted that it reached its preemption finding upon reviewing plaintiffs' claims alongside the opinions of experts. *Id.* at 540 (considering expert opinions when analyzing the resources required to remedy the plaintiffs' claims). Similarly, in a non-binding declaratory order that Defendant heavily relies upon, the Surface Transportation Board also

engaged in a fact-based assessment of the petitioners' state law claims. *See Thomas Tubbs*, No. 35792, 2014 WL 5508153 (S.T.B. Oct. 29, 2014) ("The Board analyzes the facts and circumstances of the case to determine whether the action is preempted as applied."). Moreover, in finding that the petitioners' claims were preempted by the ICCTA, the Surface Transportation Board relied upon several cases that were decided upon summary judgment or a bench trial. *See id.*[3]

Ultimately, at this stage of the case, the Court lacks sufficient information to determine implied preemption under the ICCTA. The Court's decision, however, does not prevent Defendant from renewing its preemption argument at a later stage of the case.

## IV.    CONCLUSION

Accordingly, Defendant's Motion to Dismiss Complaint (Doc. 13) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on August 14, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

---

[3] *See, e.g.*, *Tex. Cent. Bus. Lines Corp. v. City of Midlothian*, 669 F.3d 525 (5th Cir. 2012) (bench trial); *Maynard v. CSX Transp., Inc.*, 360 F. Supp. 2d 836 (E.D. Ky. 2004) (summary judgment); *In re Katrina Canal Breaches Consol. Litig.*, No. 05-4182, 2009 WL 224072 (E.D. La. Jan. 26, 2009) (summary judgment); *A & W Props., Inc. v. Kan. City S. Ry. Co.*, 200 S.W. 3d 342 (Tex. App. 2006) (summary judgment).

Unrepresented Parties